IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                  No. 22-cr-1915-WJ

RAUL GUZMAN,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FOR LACK OF STANDING

**THIS MATTER** comes before the Court following a hearing on Defendant's Motion to Suppress (**Doc. 25**), the United States' Response (**Doc. 29**), and Defendant's Reply (**Doc. 35**). On November 20, 2023, the Court held an evidentiary hearing[1] to address whether Defendant Guzman has standing to assert the search and seizure violated his Fourth Amendment rights. Upon review of the evidence presented, the Parties' arguments, and applicable law, the Court concludes Defendant lacks Fourth Amendment standing to challenge the September 14, 2022, search and seizure. Defendant's motion is therefore **DENIED**.

### BACKGROUND

On September 14, 2022, two Albuquerque Police Department (APD) officers were inspecting substandard buildings[2] pursuant to their partnership with Albuquerque Solid Waste and Code Enforcement. **Doc. 25 at 1–2; Doc. 29 at 1–2; Tr. at 43:11–17 & 62:1–63:3**. Substandard

---

[1] During the hearing, Defense called: (1) John Stockman, (2) Katrina Titus, and (3) Defendant Guzman as witnesses. The United States called: (1) Christopher Armenta, (2) Officer Walker Marion, and (3) Officer Alex Castellano as witnesses. **Docs. 40 & 43**. Document 43 is a transcript of the November 20, 2023, suppression hearing—and will be cited as "Tr." followed by the page and line number.

[2] For other cases discussing the Code Enforcement division of the City of Albuquerque, see *Brizee v. City of Albuquerque Code Enforcement*, No. 19-cv-241, 2019 U.S. Dist. LEXIS 68697 (D.N.M. Apr. 22, 2019) and *Torres v. City of Albuquerque*, No. 17-cv-754, 2017 U.S. Dist. LEXIS 151274 (D.N.M. Sept. 18, 2017).

buildings are those deemed unsafe for occupancy. *See* Albuquerque Code of Ordinances § 14-3-5-3(D)(1). Mr. Christopher Armenta, Code Enforcement supervisor, accompanied and directed the APD officers to ensure each property was in compliance with the City's code. **Tr. at 41:14–45:2 & 61:21–63:3**. One of the properties inspected by Code Enforcement (in conjunction with APD) was 421 Texas Street—which had been deemed a substandard building since December 16, 2020. **Doc. 29 at 1; Tr. at 7:8–12 & 16:4–17:5**.

Upon arrival to 421 Texas St. NE, APD officers Alex Castellano and Walker Marion walked the property. The officers were readily able to observe the "**DO NOT ENTER SUBSTANDARD BUILDING UNSAFE TO OCCUPY**" signs. **Doc. 25 at Ex. B; Doc. 29 at 5**.



The officers ensured the doors were closed, locked, and secured. **Doc. 29 at 6**. While on the property, the APD officers also ensured the door to the smaller home (that was also "yellow-noticed"[3]) was closed, locked, and secured. **Tr. at 67:12–68:11 & 76:20–77:9**. After ensuring the second house was in compliance with the Albuquerque code, officers Castellano and Marion noticed a pop-up travel trailer camper on the property. **Tr. at 77:10–78:2**.

Like they had done with the other doors on this substandard property, officers Castellano and Marion proceeded to check and see if the door to the trailer was locked and secured. This time, the door was unlocked. **Tr. at 77:25–78:4**. Upon opening the door of the trailer, the APD officers encountered Defendant Guzman. **Doc. 29 at 7; Tr. at 77:25–78:4**. When officer Marion told the Defendant to "come on out," he did not comply. **Tr. at 78:10–22**. While giving the orders to step out of the trailer, officer Marion saw what he thought was the handle of a handgun on the Defendant's waistband. **Doc. 29 at 7; Tr. at 83:1–23**. Because Defendant Guzman was not following the officers' orders, officer Marion reached toward Defendant and grabbed him. **Tr. at 69:11–70:6 & 84:4–18**. At this point, the APD officers detained Defendant Guzman and placed him in handcuffs. **Tr. at 78:23–79:2 & 85:24–86:14**.

Defendant Guzman asked APD why they were there—to which the APD officers explained the property was designated substandard and no one was allowed to reside on the premises. **Doc. 30 ("Officer Marion's lapel video")**. Defendant Guzman responded, explaining he was given permission to reside on the property. **Doc. 25 at 3; Tr. at 71:17–25**.

Officer Marion then entered the trailer to make sure no one else was inside. **Tr. at 68:23–69:7, 70:7–71:5, 94:3–7**. After entering the trailer, Officer Marion seized the black revolver from plain view. **Tr. at 70:3–71:5 & 94:3–14; Doc. 29 at 9**. Shortly thereafter, the officers learned the

---

[3] Several of the witnesses referred to the sign as a "yellow tag" or "yellow notice" throughout their testimony.

3

Defendant had an open misdemeanor warrant; so, they formally arrested him. **Tr. at 86:18–25; Doc. 29 at 9**.

## LEGAL STANDARD FOR FOURTH AMENDMENT "STANDING"

The Fourth Amendment guarantees the "right of the people to be secure in *their* persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV (emphasis added). When it comes to the Fourth Amendment, "the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). The old adage that "a man's house is his castle makes it abundantly clear that both in England and in the Colonies the freedom of one's house was one of the most vital elements of English liberty." *Payton v. New York*, 445 U.S. 576, 596–97 (1980) (cleaned up); *see also Semayne's Case*, 5 Co. Rep. 91a, 77 Eng. Rep. 194 (K.B. 1604) ("[T]he house of every one is as to him as his castle and fortress, as well for his defen[s]e against injury and violence, as for his repose.").

But no matter what is being searched—Fourth Amendment rights are "personal" and "must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). To determine if such a constitutional violation occurred requires examination of whether the claimant had a "legitimate expectation of privacy in the premises" searched. *Rakas v. Illinois*, 439 U.S. 128, 133 (1978). The Tenth Circuit has acknowledged the Supreme Court's "insistence that Fourth Amendment rights are personal in nature." *United States v. Chavez*, 985 F.3d 1234, 1239 n.4 (10th Cir. 2021) (citing *Rakas*, 439 U.S. at 140). To this end, a "defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated." *United States v. Rubio-Rivera*, 917 F.2d 1271, 1274 (10th Cir. 1990) (citation omitted).

The Tenth Circuit has referred to the issue of whether a search implicates a particular defendant's Fourth Amendment rights as "standing." *United States v. Gordon*, 168 F.3d 1222,

1226 n.2 (10th Cir. 1999); *see also United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009) (citing *Rubio-Rivera*, 917 F.2d at 1274). But "standing" in the Fourth Amendment context is not jurisdictional—rather it refers to the substantive doctrine that a defendant may not seek to exclude evidence based upon the Government's violation of someone else's rights. *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018) (explaining "Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine"); *United States v. White*, 584 F.3d 935, 952 n.7 (10th Cir. 2009); *cf.* Andrew S. Oldham, *On Inkblots and Truffles*, 135 Harv. L. Rev. F. 154, 169 n.79 (2022) (explaining Fourth Amendment standing is a "useful shorthand," but should not be confused with Article III standing). Because Fourth Amendment standing requires substantive privacy rights analysis, the Court must determine whether the challenged search or seizure violated the Fourth Amendment rights of the criminal defendant who seeks to exclude the evidence. *See e.g.*, *Rakas*, 439 U.S. at 139–40; *United States v. Valdez Hocker*, 333 F.3d 1206, 1208 (10th Cir. 2003); *United States v. Edwards*, 242 F.3d 928, 936 (10th Cir. 2001); *United States v. Martinez*, 983 F.2d 968, 972 (10th Cir. 1992); *United States v. Rascon*, 922 F.2d 584, 586 (10th Cir. 1990).

The United States Supreme Court recognizes two tests to determine when a Government search or seizure implicates a Defendant's Fourth Amendment rights. Under the traditional trespass analysis, a Fourth Amendment search occurs "when the Government obtains information by physically intruding on persons, houses, paper, or effects." *Jardines*, 569 U.S. at 5. Alternatively, a Fourth Amendment search can also occur when a Defendant's reasonable expectation of privacy was invaded by government action. *Katz v. United States*, 389 U.S. 347, 353 (1967). This inquiry requires determining "whether the individual, by his conduct has exhibited an actual (subjective) expectation of privacy," and "whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable." *Smith v.*

*Maryland*, 442 U.S. 735, 740 (1979) (citing *Katz*, 389 U.S. at 361). A Defendant's affirmative showing under either test is sufficient to implicate the Fourth Amendment. *Jardines*, 569 U.S. at 11 ("The *Katz* reasonable-expectations test has been added to, not substituted for, the traditional property-based understanding of the Fourth Amendment.").

Thus, in order to establish Fourth Amendment standing, Defendant Guzman must show his "own constitutional rights" have been infringed by the Government search—either under the *Jardines* trespass test or the *Katz* reasonable expectation of privacy test. *United States v. Carloss*, 818 F.3d 988, 992 n.2 (10th Cir. 2016). Absent such a showing, this Court may not suppress evidence. *United States v. Erwin*, 875 F.2d 268, 270 (10th Cir. 1989).

## DISCUSSION

Defendant asks the Court to exclude all evidence obtained by APD when they opened the door, seized[4] Defendant, and searched the trailer. **Doc. 25 at 1**. The United States argues Defendant does not have Fourth Amendment standing to challenge the search because he was a trespasser on substandard property. **Doc. 29 at 10**. The Court must answer two questions to determine if Defendant Guzman has standing: First, did the Defendant have a property interest in 421 Texas Street NE such that APD's search constituted a physical trespass into his home? And second, if the search was not a physical trespass into his home, did the Defendant have a subjective expectation of privacy in the camper trailer on 421 Texas Street NE that society is prepared to recognize as objectively reasonable? The Court concludes the answer to both questions is no. Defendant Guzman therefore lacks standing to challenge APD's search and seizure.

---

[4] Defendant's argument that "there was no local ordinance, regulation, or code that prohibited Mr. Guzman from being on the property" is incorrect (**Doc. 25 at 9–10**). *See* Albuquerque Code of Ordinances § 14-3-5-3(D)(1). Upon seeing Defendant Guzman on the substandard property, APD had reasonable suspicion to believe he was a trespasser. **Tr. at 86:18–25**. At that point, law enforcement conducted a valid investigative detention. *United States v. Phillips*, 71 F.4th 81, 822 (10th Cir. 2023); *United States v. Mercardo-Gracia*, 989 F.3d 829, 835–36 (10th Cir. 2021) (citing *United States v. Hammond*, 890 F.3d 901, 904 (10th Cir. 2018)); *see also Terry v. Ohio*, 392 U.S. 1 (1968).

**I. Defendant Failed to Show a Sufficient Property Interest in 421 Texas Street NE**

"A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a *third person's premises or property* has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134 (emphasis added). Defendant neither "own[ed] or lawfully possesse[d]" the property at 421 Texas Street NE. *Id.* at 143–44. Nor was Defendant Guzman "legitimately on the premises." *Carter*, 525 U.S. at 91. Finally, Defendant Guzman did not have a "degree of acceptance into the household," or an "ongoing and meaningful connection" to 421 Texas Street NE. *United States v. Rhiger*, 315 F.3d 1283, 1286 (10th Cir. 2003).

It is undisputed that the property was deemed substandard. It is also undisputed that Defendant Guzman did not own the property. It is further undisputed that Defendant Guzman was not an overnight guest on this condemned property. Instead, Defendant argues his conduct and expectations created an expectation of privacy because the trailer itself was not tagged as substandard (**Doc. 25 at 2**). The Court is not persuaded. Once the "substandard" sign was posted (sometime around December 16, 2020) it became a criminal trespass to reside on the property *unless* during daylight hours for commercial purposes of repairing, cleaning, or otherwise fixing-up the property. **Doc. 25 at Ex. B; Doc. 29 at 5**.

It is a Defendant's burden to adduce "facts at the suppression hearing indicating that *his own rights* were violated" by a challenged search. *Erwin*, 875 F.2d at 270 (emphasis added). Defendant asserts his rights were violated by APD's physical intrusion because he was residing on the property with Mr. Cannon's consent during the daytime. Defendant has not carried his burden of proof by presenting facts sufficient to support a finding that he was authorized to be on the property even with Mr. Cannon's consent.

7

Defendant Guzman, therefore, cannot claim a violation of his rights based upon the introduction of evidence procured through a search of a third person's property or premises. *United States v. Salas*, 248 F. App'x 906, 909 n.4 (10th Cir. 2007) (unpublished) (citing *United States v. DeLuca*, 269 F.3d 1128, 1131 (10th Cir. 2001)).

**II. Defendant Did Not Have a Reasonable Expectation of Privacy in 421 Texas Street NE**

Having concluded Defendant Guzman lacks standing to challenge APD's search as a physical trespass upon his own property, the Court turns to whether Defendant has standing to challenge the search as an intrusion upon his reasonable expectation of privacy. Defendant argues he had a reasonable expectation of privacy in the trailer on 421 Texas Street NE because he "began residing in the camper trailer approximately one week" before the search. **Doc. 25 at 3; Tr. at 34:13**. The United States contends Defendant had no expectation of privacy that society is prepared to recognize as reasonable because he wrongly occupied substandard property. **Doc. 29 at 10**. The Court agrees with the United States—Defendant Guzman had no expectation of privacy that society is prepared to recognize as reasonable.

A "Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001). A reasonable expectation of privacy is one that "has a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *United States v. Jones*, 565 U.S. 400, 408 (2012) (citation omitted). The *Rakas* Court observed "'wrongful' presence at the scene of a search would not enable a defendant to object to the legality of the search." *Rakas*, 439 U.S. at 141 n.9. Consistent with these parameters, courts have determined the trespass rule is applied even more stringently when the occupant has received notice to depart. *See United States v. Croft*, 429 F.2d

8

884, 887 (10th Cir. 1970) (holding a guest in a hotel room loses his reasonable expectation of privacy when his rental period elapsed); *United States v. Battle*, 637 F.3d 44, 49 (1st Cir. 2011) (holding a former overnight guest—ex-lover—who was told to leave and never come back was a trespasser with no Fourth Amendment protections).

Much the same, the Tenth Circuit has held a squatter has no reasonable expectation of privacy in property he wrongfully occupies. *See United States v. Dodds*, 946 F.2d 726, 728–29 (10th Cir. 1991) (finding a squatter had no "standing" to challenge the search of an abandoned apartment where he slept); *see also United States v. Ruckman*, 806 F.2d 1471 (10th Cir. 1986) (finding no reasonable expectation of privacy when Defendant wrongfully occupied a cave on federal land). Other Circuits have come to the same conclusion. *See Amezquita v. Hernandez-Colon*, 518 F.2d 8, 11–12 (1st Cir. 1975) (stating squatters had no reasonable expectation of privacy to land in which they had "had no colorable claim to occupy"); *United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980) ("[A] mere trespasser has no Fourth Amendment protection in premises he occupies wrongfully."); *United States v. Hunyady*, 409 F.3d 297, 303 (6th Cir. 2005) (holding a tenant that would not vacate the premises became a trespasser with no reasonable expectation of privacy); *United States v. Sawyer*, 929 F.3d 497, 500 (7th Cir. 2019) (noting agreement among several circuits that "a trespasser's wrongful presence forestalls a Fourth Amendment challenge"); *United States v. Gale*, 136 F.3d 192, 196 (D.C. Cir. 1998) (citing cases).

Because the evidence is woefully inadequate to establish that Defendant Guzman had an expectation of privacy that society is prepared to recognize as reasonable as to the camper trailer located on the substandard property—the Court need not address whether Defendant possessed a

9

subjective[5] expectation of privacy. As discussed above, Defendant had no ownership or property interest in the substandard lot at the time of the search. His agreement with the owner (to the extent there was one) to reside on or otherwise occupy 421 Texas Street NE was wrongful at its inception. As the *Ruckman* Court explained, failure to have a "legal right" to occupy property prevents any reasonable expectation of privacy in a dwelling. *Ruckman*, 806 F.2d at 1474. Accordingly, Defendant's argument as to having a reasonable expectation of privacy in the camper trailer on the substandard property located at 421 Texas Street NE are not well-taken.

**III. The Posted Signs Made it Unlawful to Occupy or Reside on the Property**

The City of Albuquerque has the authority to order buildings be evacuated to protect the health and safety of the public. *See Moore v. Turpen*, No. 13-cv-7556, 2014 U.S. Dist. LEXIS 203718, at *30 (D.N.M. May 1, 2014). This is exactly what happened in this case. Albuquerque Code of Ordinances § 14-3-5-3 dictates the administration and enforcement of the uniform housing code. Pursuant to this authority, the property at 421 Texas Street NE was designated "substandard" and unsafe for occupancy. The posted signs state unequivocally that no one could reside or occupy the property (**Doc. 25 at Ex. B; Doc. 29 at 5**). This restriction applied to the property owner and any invitees—including Defendant Guzman.[6]

For context, most state legislatures have adopted laws indicating that conspicuously posted signs are sufficient to support a criminal trespass. *See* WAYNE R. LAFAVE, CRIMINAL LAW § 21.2 (5th ed. 2010) (collecting state statutes). The substandard property sign at issue here was not a welcome mat—it was the exact opposite. "It is simply nonsense to say that society is prepared to

---

[5] Although objectively unreasonable given the facts of this case, the Court acknowledges that Mr. Guzman's testimony (**Tr. at 34:24–35:10**) that he received "permission" to stay in the trailer provides some evidence in support of the conclusion that Defendant had a subjective expectation of privacy with respect to the trailer.

[6] Section 14-3-5-6 of the Albuquerque Code states: "No person shall occupy any building which has been posted as specified in this section in a manner contrary to the terms of the notice. ***No person shall be on the property*** without the written permission from the Department or and with the permission on them at all times while on the property" (emphasis added).

10

recognize his right to be where society by the processes of the law has ordered him not to be." *United States v. Gutierrez-Casada*, 553 F. Supp. 2d 1259, 1271 (D. Kan. 2008) (quoting *Commonwealth v. Morrison*, 710 N.E.2d 584, 586 (Mass. 1999)).

Although signs are not dispositive in determining if an individual has a reasonable expectation of privacy in the Fourth Amendment context, they are still a factor. *Compare United States v. Carloss*, 818 F.3d 988, 1003–15 (10th Cir. 2016) (Gorsuch, J., dissenting) (arguing that both a fence and a single "No Trespassing" sign would revoke the implied license to enter), *with United States v. Carloss*, 818 F.3d 988, 999–1003 (10th Cir. 2016) (Tymkovich, J., concurring) (suggesting that a residential fence with a locked gate would revoke the implied license to enter), *and United States v. Jackson*, 585 F.2d 653, 660 (4th Cir. 1978) (explaining a "For Rent" placard conveyed the property was open to the public); *see also United States v. McFarland*, 726 F. App'x 709, 714 (10th Cir. 2018) (unpublished) (concluding "a single sign" that was bent and angled was still conspicuously displayed). Put simply: signs are important. *See Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 816 (10th Cir. 2022) ("For example, if a restaurant sign says 'No dogs allowed,' does that mean that pet monkeys and baby elephants are welcome?") (citing A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012)); *see also Ganser v. Ganser*, No. 07-cv-389, 2008 U.S. Dist. LEXIS 64010, at *8 (D. Colo. Aug. 21, 2008) (explaining a "beware of dog" sign indicates a dog's presence). Here, the sign belies Defendant Guzman's interpretation. The property "owner" (either Mr. Stockman or Mr. Cannon) as well as Defendant were sufficiently on notice that no one could lawfully occupy or reside on the property. **Doc. 25 at Ex. B; Doc. 29 at 5**. Defendant's assertion that the notice *only* indicated that "no person shall occupy this structure or remain on this property past daylight hours" is incorrect. **Doc. 25 at 2**.

11

For the same reasons Defendant asserts he was "not a trespasser or unlawfully on the property,"[7] the Court concludes Defendant failed to demonstrate an expectation of privacy in 421 Texas Street NE "that society recognizes as reasonable"—given the clear notice that "NO PERSON SHALL RESIDE . . . ON THIS PROPERTY." *Kyllo*, 533 U.S. at 33 (citing *Katz*, 389 U.S. at 361).

## IV. Even if Defendant Had Fourth Amendment Standing the Search and Seizure Would not be Suppressed Because it Fits into Several Exceptions

Despite a disfavor of federal courts issuing "alternative holdings,"[8] the Court finds it prudent to analyze the remaining arguments of the Parties. Even assuming that Defendant Guzman had Fourth Amendment standing, the Court would not suppress the evidence for the reasons below.

**A. Initially the Defendant was temporarily detained, not arrested**

The Court begins with Defendant's claim that he was not merely detained, but instead arrested without probable cause (**Docs. 25 & 35**). The Government rebuffs this allegation and explains that Defendant Guzman was only temporarily detained (**Doc. 29 at 9, 12, 14**).

A *Terry* stop is an investigative detention of limited scope and duration that is supported by a reasonable suspicion of criminal activity. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023) (citing *Hammond*, 890 F.3d at 904); *see also Terry v. Ohio*, 392 U.S. 1 (1967). Even the use of handcuffs does not turn a *Terry* stop into an arrest. *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993) (citing *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993)). Rather, to prevail on his Fourth Amendment unreasonable seizure claim, Defendant must show that APD lacked reasonable suspicion that he was trespassing (**Doc. 25 at 5–10**). This proves too great a task given the clearly posted signage (**Doc. 29 at 8–10, 16**).

---

[7] To the extent Defendant claims he was authorized to be on the property to repair it (**Tr. at 37:3–13**), this argument fails based on the lapel footage since he clearly states: "I'm just waking up, dude." **Tr. at 57:13–15**.
[8] *See, e.g., United States v. Files*, 63 F.4th 920, 931 (11th Cir. 2023) (Newsom, J., concurring).

After detaining Defendant Guzman, the APD officers conducted a valid (and necessary) protective sweep for officer safety. In fact, Officer Marion testified he conducted a "safety sweep of the trailer . . . to ensure no one else was inside." **Tr. at 79:15–16**. It was during this brief cursory visual inspection of the trailer that Officer Marion observed the revolver in plain view. *See United States v. Muhtorov*, 20 F.4th 558, 600–01 (10th Cir. 2021) (explaining the plain view doctrine can apply even when the "initial intrusion" is not support by a warrant).

A protective search for weapons in the absence of probable cause is also reasonable under the Fourth Amendment. *Terry*, 392 U.S. at 27 (determining officers may "search for weapons for the protection of the police officer"); *see also United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996). Similarly, a "protective sweep" is constitutionally permissible—so long as it constitutes a limited search of premises conducted for the safety of police officers. *United States v. Banks*, 884 F.3d 998, 1013 (10th Cir. 2018); *see also Maryland v. Buie*, 494 U.S. 325, 327 (1990). Protective sweeps include a cursory visual inspection of those places in which a person may be hiding. *Id.*

To prevail on his Fourth Amendment unreasonable search claim, Defendant must show that APD exceeded the scope of their protective search or sweep. Again, this proves too great a task (**Doc. 29 at 12–16**). The APD officers had reasonable suspicion that Mr. Guzman was a criminal trespasser based on the "yellow notice." **Doc. 25 at Ex. B; Doc. 29 at 5; Tr. at 86:18–87:6**. Upon coming into contact with the Defendant, and pursuant to their reasonable suspicion, APD initiated a valid investigatory detention. *United States v. Phillips*, 71 F.4th 817, 822 (10th Cir. 2023) (explaining reasonable suspicion "need not rise to the level required for probable cause"). Even so, the APD officers here had concrete and articulable facts (namely, Defendant's

13

presence) that formed the basis for their reasonable suspicion that criminal activity was afoot. *See United States v. Anderson*, 62 F.4th 1260, 1266 (10th Cir. 2023).

As for the protective sweep, the Government cites several factors in support of the officers' reasonable belief here: (1) Mr. Guzman's refusal to exit the vehicle when ordered to do so; (2) Mr. Guzman's furtive movements and concealment of his hand; (3) the sound of metal hitting wood; and (4) the appearance[9] of an object near Mr. Guzman's waistband that appeared to Officer Marion to be part of the handle grip of a handgun. **Tr. at 69:22–70:2, 83:20–23, 84:24–85:1, 85:17–20; Doc. 29 at 12–13**. The Court agrees. The officers could not simply leave a revolver in an uncleared trailer. *United States v. Canada*, 76 F.4th 1034, 1309 (10th Cir. 2023) (explaining protective sweeps exist "for officer safety" and that courts "do not require officers to take unnecessary risks"). Their search for the weapon was a justified exigency. *United States v. Morrison*, 58 F. App'x 381, 384 (10th Cir. 2003) (unpublished) (citing *Terry*, 392 U.S. at 25–26). Officer Marion testified that he entered the camper trailer "to make sure no one else was inside." **Tr. at 87:18–20**. The revolver was found in plain view within arm's reach of where Mr. Guzman was detained (**Tr. at 94:8–12**). *United States v. Palmer*, 360 F.3d 1243, 1248 (10th Cir. 2004) (citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)).

Accordingly, the Court finds the detention of Defendant Guzman and the subsequent protective sweep of the trailer were justified by a reasonable belief that Defendant (or others) posed a threat to officer safety. This scenario led to discover the revolver in plain view[10].

**B. The firearm was subject to inevitable discovery**

---

[9] Officer Marion's testimony was unclear about when he first saw the handle of the firearm. **Tr. at 83:20–23 & 85:17–20** (agreeing that handle of the revolver was seen while also stating he did not "immediately" see the handle).

[10] Additionally, the Court notes that the doctrine of plain view applies "to the full range of senses, including plain hearing." *Muhtorov*, 20 F.4th at 598 (citing cases). After the officers heard metal hitting wood while Defendant Guzman's hand was out of sight, the revolver was also in "plain hearing."

Under the inevitable discovery doctrine, evidence that is obtained illegally may still be admitted if it "ultimately or inevitably would have been discovered by lawful means." *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). In such cases, the Government bears the burden of proving that the evidence would have been discovered without the Fourth Amendment violation. *See United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005).

Here, the inevitable discovery doctrine cuts against Defendant's case. Had the officers not found the revolver by entering the camper, the officers would have found Defendant's handgun during a subsequent search of the trailer. *See United States v. Martinez*, 512 F.3d 1268, 1274 (10th Cir. 2008) (explaining the Government can rely on a hypothetical when proving inevitable discovery). Given the officers' prior observations of Mr. Guzman's obfuscating movements near his waistband, the firearm would have been discovered "after the records check revealed Defendant's felony criminal history." **Tr. at 80:23–81:5; Doc. 29 at 14**.

Defendant is correct that "nothing had been done to begin the process of obtaining a warrant." **Doc. 35 at 7**. But none of the *Souza* factors are dispositive on their own. *Christy*, 739 F.3d at 541 (citing *United States v. Souza*, 223 F.3d 1197, 1204 (10th Cir. 2000)). In cases where the theory of inevitable discovery is that a warrant *would* have been obtained but for the illegal search, the district court must evaluate the likelihood that a warrant would have been issued and the evidence would have been found. *Souza*, 223 F.3d at 1204. Although "evidence of steps to obtain a warrant is one way" the Government can prove inevitable discovery, it is "not the only way." *Christy*, 739 F.3d at 543. Here, it is highly likely that a warrant would have been issued if the officers applied for one—based on their personal observations of his furtive movements, the

15

revolver handle, and Defendant's felon status. **Doc. 29 at 14–15; Tr. at 80:23–81:5, 86:18–87–5, & 109:6–21**.

Even presuming an illegal search occurred (for the purposes of analysis here), the Court finds the evidence would have been inevitably discovered. Consideration of the *Souza* factors above supports this conclusion.

## C. The "good faith" exception to the exclusionary rule applies

Evidence obtained "in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974). But the "exclusionary rule" is "not itself a constitutional guarantee." *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018). The purpose of the exclusionary rule is to deter unlawful police conduct. *Id.* Accordingly, the exclusionary rule is applied only when it can deter future violations. *United States v. Cotto*, 995 F.3d 786, 795 (10th Cir. 2021). When "police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." *Davis v. United States*, 564 U.S. 229, 249–50 (2011). There are no benefits produced by suppressing "evidence obtained in the reasonable good-faith belief that a search or seizure" was lawful. *United States v. Leon*, 468 U.S. 897, 909 (1984).

Again, the Court has already decided that Defendant Guzman lacks Fourth Amendment standing to challenge the September 14, 2022, search and seizure. Assuming Defendant had standing, however, the Court now looks to see if a "well trained officer would have known the search was illegal . . . [considering] all of the circumstances." *United States v. Madden*, 682 F.3d 920, 928 (10th Cir. 2012). The Court finds the exclusionary rule does not apply based on *Illinois v. Krull*, 480 U.S. 340 (1987), *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), and *United States v. Herrera*, 444 F.3d 1238 (10th Cir. 2006). The Supreme Court has extended the good faith exception to warrantless administrative searches—a ruling adopted by the Tenth Circuit.

The Supreme Court has also extended the good faith exception to police reliance on mistakes of third parties. *See Arizona v. Evans*, 514 U.S. 1 (1995) (holding the exclusionary rule does not apply to police who reasonably relied on mistaken information in a court's database); *Herring v. United States*, 555 U.S. 135 (2009) (concluding that "when police mistakes are the result of negligence," the exclusionary rule does not apply).

Applying these holdings to Mr. Guzman's case makes clear there is no deterrent effect to suppressing the evidence at issue. Officers Castellano and Marion were on the property pursuant to the city of Albuquerque's Code Enforcement division (**Tr. at 91:17–92:19**). *See* Albuquerque Code of Ordinances § 14-3-5-3(D)(1). Mr. Christopher Armenta, Code Enforcement supervisor, tasked the APD officers with ensuring the "whole property" was in compliance with the yellow notice. **Tr. at 45:12–47:12**. The good faith exception "turns to a great extent on whose mistake produces the Fourth Amendment violation." *Herrera*, 444 F.3d at 1250. If Mr. Guzman's rights were violated, it was not the fault of the police. *United States v. Vanness*, 342 F.3d 1093 (10th Cir. 2003) (deciding a police officer acted in good faith when enforcing a potentially vague municipal ordinance). APD were merely the vehicle for ensuring compliance with the City's Code Enforcement division (**Tr. at 62:4–63:7 & 66:21–69:3**).

For these reasons, the Court finds applying the exclusionary rule would be inappropriate and the good faith exception carries the day.

**D. Applicability of the "community caretaking" exception post-*Caniglia***

The community caretaking function of law enforcement officers does not create "a standalone doctrine that justifies warrantless searches and seizures in the home." *Caniglia v. Strom*, 141 S. Ct. 1596, 1598 (2021). If 421 Texas Street NE was, in fact, Mr. Guzman's home (in the legal sense)—then reliance on the community caretaking function alone would not sanction

APD's actions. Put simply: if APD were on Mr. Guzman's property without a warrant, without consent, and without a recognized exigent circumstance; they violated his Fourth Amendment rights. *Caniglia*, 141 S. Ct. at 1599; *see generally United States v. Ramos*, No. 23-6071, 2023 U.S. App. LEXIS 33173 (10th Cir. 2023) (explaining a "reasonable, non-pretextual community-caretaking rationale" is required in the context of vehicle impoundment). Nevertheless, *Caniglia* also reaffirms that law enforcement may perform warrantless searches in a community-caretaking context if exigent circumstances are present. *Parsons v. Velasquez*, 551 F. Supp. 3d 1085, 1197 (D.N.M. July 30, 2021) (citing *Caniglia*, 141 S. Ct. at 1599). Even after *Caniglia*, law enforcement may take "objectively reasonable action in its community-caretaking role." *Ramos*, 2023 U.S. App. LEXIS 33173 at *5.

That being said, the community caretaking exception is applicable here because it provides another justification for affirming APD's action of securing the revolver and removing a nuisance from the area. *United States v. Braxton*, 61 F.4th 830, 834–35 (10th Cir. 2023) (citing *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993)); *see also United States v. Trujillo*, 993 F.3d 859, 873 (10th Cir. 2021) (justifying officers' removal of firearms from an area accessible to the public); *cf. Chavez*, 985 F.3d at 1242–45 (acknowledging the seizure of firearms is a permissible community caretaking function). Unlike the case of *United States v. Mann*, wherein the district court determined that "firearms in an unoccupied house . . . that law enforcement knew to be unoccupied" did not create an exigency—here, APD did not know the trailer was unoccupied (**Tr. at 68:23–69:7, 70:7–71:5, 94:3–7**). *Mann*, No. 22-cr-1322, 2023 U.S. Dist. LEXIS 188402, at *23 (D.N.M. Oct. 19, 2023). Accordingly, an exigency arose; meaning that the community caretaking function was not the "standalone" reason for entering the trailer. The potential threat to the officers' safety was reasonable based on the unsecured trailer and firearm. *United States v. Najar*, 451 F.3d

710, 718 (10th Cir. 2006) (adopting a two-part test for determining if the risk of danger creates an exigency).

If entry into the trailer constituted a warrantless search of Defendant Guzman's home, the Court finds it was justified, compelling, and reasonable under the "community caretaking" doctrine in conjunction with exigent circumstances. *See, e.g., Davis*, 564 U.S. at 234 (discussing officer safety as an exigency); *New York v. Quarles*, 467 U.S. 649, 658–59 (1984) (discussing the officer and public safety exception in the *Miranda* context); *United States v. Pacheco*, 884 F.3d 1031, 1039 (10th Cir. 2018) (acknowledging "a concern for officer safety" as a valid exigency).

## CONCLUSION

For the foregoing reasons, the Court concludes Defendant Guzman lacks Fourth Amendment standing to challenge APD's September 14, 2022, search of 421 Texas Street NE. Defendant failed to establish that APD's search was a physical trespass on his own property or that he had an expectation of privacy as to the camper trailer on the property that society recognizes as reasonable. Alternatively, the Court finds a plethora of exceptions (such as a protective sweep, plain view, inevitable discovery, the good faith exception, and the community caretaking exception) provide permissible bases for denying the motion to suppress—even if Defendant Guzman had standing. Defendant's Motion to Suppress Evidence (**Doc. 25**) is therefore **DENIED**.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE